Tadeusz Orzechowski et al., Plaintiffs, and John Bimbo et al., Appellants, v Warner-Lambert Company et al., Respondents, et al., Defendants.

Second Department, March 7, 1983

**APPEARANCES OF COUNSEL**

*Schekter, Aber, Rishty, Goldstein & Schechter, P. C.* for appellant James Curry and *Witchel & Abraham, P. C.* for appellant John Bimbo (*Milton M. Witchel* and *Neil Goldstein* of counsel).

*McHugh, Leonard & O'Conor* for respondents Warner-Lambert and another, *Arkin & Arisohn, P. C.* for respondents Arthur Kraft and another and *Andrew M. Lawler, Jr.,* for respondents James O'Mahoney and another (*James M. Leonard, Denis C. McMahon, Arthur T. Cambouris* and *Dennis E. Milton* of counsel).

**OPINION OF THE COURT**

Gulotta, J. P.

The principal issue raised on this appeal is whether the underlying causes of action against the plaintiffs' employer

and certain of their coemployees are barred by the "finality" and "exclusivity" provisions of the Workers' Compensation Law (Workers' Compensation Law, §§ 11, 23, 29). In our view, this question must be answered in the affirmative and the complaints dismissed as against respondents.

John Bimbo and James Curry (hereinafter plaintiffs), are two of a number of employees of defendant Warner-Lambert Company who, on November 21, 1976, were seriously injured in a fire and explosion which occurred at a manufacturing plant of the American Chicle division of that company located in Long Island City. Plaintiffs, as well as other affected employees and/or their personal representatives, thereafter commenced a series of personal injury and wrongful death actions against the various codefendants, including their employer, Warner-Lambert, the American Chicle Company, the officers and employees of Warner-Lambert who were responsible for the operation of the plant in question, and the companies responsible for producing and supplying the chemical substances and equipment which were alleged to have caused the explosion.

In the order appealed from, Special Term dismissed the complaints as against the American Chicle Company, finding that it had ceased to exist as a separate entity in 1962, after merging with and selling all of its assets to the Warner-Lambert Pharmaceutical Company (now the Warner-Lambert Company). In addition, Special Term dismissed the complaints as against the remaining defendant-respondents on the ground, *inter alia,* that the actions were barred by the acceptance and retention of workers' compensation benefits. At the time of the commencement of these actions in October of 1979, Bimbo and Curry had already been receiving workers' compensation benefits from their employer's insurance carrier for a period of nearly three years, and had thus far collected in excess of $110,000 and $43,000, respectively, in benefits.

We affirm.

As a *quid pro quo* for the swift and secure payment of benefits for injuries sustained in the course of their employment, without regard to fault (see Workers' Compensation Law, § 10), the Workers' Compensation Law gener-

ally requires employees to forfeit their right to maintain a common-law tort action against their employers and coemployees for work-related injuries (see *Billy v Consolidated Mach. Tool Corp.,* 51 NY2d 152, 159; *O'Rourke v Long,* 41 NY2d 219, 222). Thus, section 11 of the Workers' Compensation Law specifically provides: "The liability of an employer prescribed by the last preceding section shall be *exclusive* and in place of *any other liability whatsoever*" to the injured employee or his personal representative on account of such injury or death, except in those cases in which the employer has failed to secure workers' compensation (emphasis supplied). In addition, subdivision 6 of section 29 of the Workers' Compensation Law provides: "The right to compensation or benefits under this chapter, shall be the *exclusive* remedy to an employee, or in case of death his dependents, *when such employee is injured or killed by the negligence or wrong of another in the same employ*" (emphasis supplied).

Notwithstanding these statutory provisions, however, case law has developed a limited exception to the exclusivity of workers' compensation benefits as the sole remedy for an employee injured in the course of his employment, e.g., where the injury is the product of "an *intentional or deliberate* act by the employer directed at causing harm to [that] *particular employee*" (*Mylroie v GAF Corp.,* 81 AD2d 994, 995, affd 55 NY2d 893; emphasis supplied). Accordingly, covered employees have consistently been permitted to maintain common-law causes of actions for intentional tort against their employers and coemployees where their injuries have been the product of deliberate acts undertaken to injure that particular employee or to have him injured (see, e.g., *Lavin v Goldberg Bldg. Material Corp.,* 274 App Div 690, mot for lv to app den 275 App Div 865; *DeCoigne v Ludlum Steel Co.,* 251 App Div 662; *Le Pochat v Pendleton,* 187 Misc 296, affd 271 App Div 964), and it is within this limited exception that the plaintiffs have attempted to bring themselves by alleging, *inter alia,* that the defendant-respondents "consciously, willfully, knowingly and intentionally ignored the hazards they created or caused to be created in and by the Freshen-Up manufacturing process [i.e., that aspect of the operation in which

the explosion occurred], and/or * * * maintained same * * * notwithstanding their knowledge that physical harm would or was likely to be inflicted upon [these] plaintiff[s] and others".

The plaintiffs cannot prevail. Viewed most favorably to the plaintiffs, their allegation to the effect that defendants-respondents had "intentionally ignored" the known hazard of an explosion in connection with the design and operation of the Freshen-Up manufacturing process cannot be deemed to satisfy the case-law requirement of "specific acts" directed at causing harm to "particular employees" necessary to bring this case within the "intentional injury" exception, and is tantamount to an allegation of gross negligence, or perhaps, even reckless conduct on the part of defendants-respondents leading to an industrial accident. Unfortunately for the plaintiffs, such conduct is not excepted from the "exclusive remedy" provisions of the Workers' Compensation Law (see *Mylroie v GAF Corp.,* 81 AD2d 994, affd 55 NY2d 893, *supra; Finch v Swingly,* 42 AD2d 1035; *Santiago v Brill Monfort Co.,* 11 AD2d 1041, affd 10 NY2d 718; *Artonio v Hirsch,* 3 AD2d 939).[1]

Assuming, *arguendo,* however, that the plaintiffs had been able to allege sufficient acts on the part of defendants-respondents to bring themselves within the foregoing exception, the fact remains that they would still be barred from maintaining these causes of action against their employer, as the Court of Appeals has recently held that a claimant "who applies for, is awarded and *accepts* workers' compensation death benefits is barred by the exclusive

---

**1.** Although an intention to cause harm to the particular employee need not be alleged where an action has been commenced against a fellow employee for injuries resulting from an intentional tort committed *outside* the scope of the coemployee's employment (see *Maines v Cronomer Val. Fire Dept.,* 50 NY2d 535, 545-546), there has been no allegation in this case that the acts of the individual defendants-respondents giving rise to the plaintiffs' injuries were committed while acting *outside* the scope of their employment (cf. *People v Warner-Lambert Co.,* 51 NY2d 295, cert den 450 US 1031, wherein criminal charges against these same codefendants arising out of the same explosion were ordered dismissed). In fact, the allegations here are to the contrary, i.e., that the tort was committed in the course of their employer's business by ignoring the known hazard of an explosion in connection with the manufacture of Freshen-Up gum. In the absence of any allegation that their coemployees were acting intentionally or outside the scope of their employment in engaging in the activities which allegedly resulted in their injuries, plaintiffs' common-law causes of action against their coemployees are barred by subdivision 6 of section 29 of the Workers' Compensation Law (cf. *Maines v Cronomer Val. Fire Dept., supra; Jackman v Fisher,* 91 AD2d 602; *Hirsch v Mastroianni,* 80 AD2d 633).

remedy and finality provisions of the Workers' Compensation Law from maintaining a wrongful death action against the deceased worker's former employer for intentional [injury, e.g., an] assault" (*Werner v State of New York,* 53 NY2d 346, 348-349; emphasis supplied). In addition, and with particular relevance to this case, the Court of Appeals has even more recently extended the rule of *Werner* to a nondeath case in which compensation benefits were neither applied for nor accepted by the plaintiff employee, stating: "The Workers' Compensation Board having properly acquired jurisdiction with respect to an employee's injuries, the board's determination that those injuries were accidental and occurred within the course of her employment is binding between the parties under the exclusive remedy and finality provisions of the Workers' Compensation Law and, even though the employee did not herself apply for or accept benefits, is, until set aside, a bar to an action by the employee against her employer for damages based on intentional tort" (*O'Connor v Midiria,* 55 NY2d 538, 539, affg 85 AD2d 896). In our view, *O'Connor v Midiria* (*supra*) is controlling in the case at bar.[2]

In the *O'Connor* case (*supra*), the plaintiff, Michaeline O'Connor, alleged that she had been intentionally assaulted on September 17, 1978 by a coemployee during the course of her employment. A report of the injury was thereafter filed with the Workers' Compensation Board by the plaintiff's employer and her physician (but not the plaintiff), and a finding of a compensable injury was made. In October of 1978, the plaintiff apparently began receiving workers' compensation benefits, but on the advice of her attorney the checks were returned with the explanation that a civil action was contemplated. The board, however, persisted in mailing the benefit checks to the

---

2. While plaintiffs' common-law causes of action against their coemployees would not be barred on this basis (see *Maines v Cronomer Val. Fire Dept., supra,* pp 543-545; see, also, *Werner v State of New York,* 53 NY2d 346, 353; *Jackman v Fisher, supra*) these actions are nonetheless barred by the plaintiffs' failure to allege the commission of an intentional tort (as heretofore indicated), combined with their failure to allege that the activities complained of were not within the scope of employment of their fellow employees (cf. *Maines v Cronomer Val. Fire Dept., supra; Jackman v Fisher, supra; Hirsch v Mastroianni, supra*).

plaintiff, which were thereafter retained by her attorney without cashing. A civil action was then commenced in which the plaintiff sought to recover monetary damages from her employer and coemployees for injuries arising out of the alleged assault, whereupon the employer moved for summary judgment in its favor on the ground that the action was barred by the workers' compensation award. In affirming the order of the Appellate Division granting the employer's motion and dismissing the complaint as against it, the Court of Appeals stated (*supra,* pp 540-541):

"In *Werner v State of New York* (53 NY2d 346), where claimant applied for and received workers' compensation death benefits, we held that she was barred by the exclusive remedy and finality provisions of the Workers' Compensation Law from maintaining a wrongful death action against the deceased worker's former employer. Although the present case arises in a slightly different factual context, the legal issue is the same. For here, as in *Werner,* the board rendered a determination of 'accident, notice and causal relationship * * * for injury.' Plaintiff Michaeline O'Connor had notice that the employer's report had been filed and that board claim proceedings had been scheduled. The board's determination is binding between the parties not only because of sections 11, 23 and 29 of the Workers' Compensation Law, but also on settled principles of *res judicata* which apply to administrative determinations when the agency is acting, as does the compensation board, in a quasi-judicial capacity (*Werner, supra,* at p 353). *To permit further adjudication of the question after the board has made an award would be inconsistent with the statutory mandate that the compensation remedy be exclusive as to the employer and that the board's decision be conclusive.*

"Plaintiffs argue, however, citing *Jones v State of New York* (33 NY2d 275), that where an employee elects to pursue his common-law remedy for intentional tort, the employer should be estopped from filing a compensation claim on the employee's behalf. This contention misconceives the purpose of an employer's report of injury, which is to protect *both* the employer and the employee. The *quid pro quo* for the 'swift and sure source of benefits to the injured employee' (*O'Rourke v Long,* 41 NY2d 219, 222) is

the limitation of the employer's liability for work-related accidents to compensation (*O'Rourke, supra*). *Whether the employee or the employer first brings the injury to the attention of the board, a finding by the board that the injury is compensable is, until set aside, a final and conclusive determination which bars an action at law*" (emphasis supplied).

Here, as in the *O'Connor* case (*supra*), the payment of benefits to the plaintiffs (Bimbo and Curry) was initiated by their employer, and, as in *Werner v State of New York* (*supra*), those benefits were retained. Moreover, although the plaintiffs are correct in maintaining that they never actually appeared or participated in proceedings before the Workers' Compensation Board, the fact remains that they did accept and retain those benefits, and that the presence or absence of plaintiffs' participation before the board was not regarded as a crucial factor by the Court of Appeals in *O'Connor*. Rather, the seminal event in that case appears to have been the board's determination that the plaintiffs' injuries were accidental in nature and suffered in the course of her employment, a factor which has its analog here in the board's determination to continue the plaintiffs' benefits. Thus, in the case of Mr. Curry, the board issued an order on notice, dated May 9, 1979, continuing his compensation benefits in view of his adjudged "permanent partial disability", while in the case of Mr. Bimbo a notice was sent in January of 1979 indicating that his benefits would be continued at their current rate until modified by the board.

In this regard, we do not view the absence in this case of a formal determination of "accidental injury" to be a critical distinction (cf. *O'Connor v Midiria,* 55 NY2d 538, 540, *supra; Werner v State of New York,* 53 NY2d 346, 352, *supra*), for implicit in any determination authorizing the payment of benefits under the Workers' Compensation Law is the finding that the injuries sustained are compensable in nature, i.e., "*accidental* injuries arising out of and in the course of [the] employment" (Workers' Compensation Law, § 2, subd 7; emphasis supplied; see *Velasquez v Pine Grove Resort Ranch,* 61 AD2d 1102, app dsmd 44 NY2d 949; *Christian v DeLaurentis Corp.,* 58 AD2d 752;

*Durso v Modern Biscuit Corp.,* 11 AD2d 1036; *Doca v Federal Stevedoring Co.,* 280 App Div 940, affd 305 NY 648). Clearly, such decisions were reached in the instant case, and it is well established that board decisions affecting matters within its jurisdiction are entitled to *res judicata* effect (see *O'Connor v Midiria, supra; Werner v State of New York, supra*). Moreover, the "finality" provision (§ 23) of the Workers' Compensation Law specifically provides: "[a]n *award* or decision of the board shall be *final and conclusive* upon *all* questions within its jurisdiction, as against the state fund or between the parties, *unless reversed or modified on appeal"* (emphasis supplied).

In sum, pursuant to statute and in accordance with the rationale expressed in the *Werner* and *O'Connor* cases (*supra*), we have reached the conclusion that the maintenance of these tort actions against the defendant employer would constitute an impermissible collateral attack upon the findings of accidental injury implicit in the board's determinations authorizing the payment of the workers' compensation benefits at bar.[3] Plaintiffs' remedy, if they be so advised, lies in the utilization of the procedures outlined in the Workers' Compensation Law for the prosecution of an appeal and/or an application to the board to modify its decision regarding the accidental nature of their injuries (see Workers' Compensation Law, §§ 23, 123; see, also, *O'Connor v Midiria, supra,* p 541; *O'Rourke v Long, supra,* pp 227-228). As the Court of Appeals stated in *O'Connor v Midiria* (*supra,* p 541): "[A]n employee is not without protection when the employer reports [an] injury. Under section 20 of the Workers' Compensation Law an employee who wishes to contest compensability on the ground that the injury was intentional rather than accidental may do so before the board by demanding a hearing * * * [Failing that, he] may still apply to the board pursuant to section 123 for a change in its determination. *What* [*he*] *may not do* [*however*] *is undermine the conclusiveness of the board's determination and the exclusivity of the compensation remedy by collateral attack in an action such as this"* (emphasis supplied). On this analysis, we need not reach the further

---

3. See note 2, *supra.*

question of whether the actions are barred by the Statute of Limitations.

We have considered the plaintiffs' remaining contentions and find them to be without merit.

WEINSTEIN, NIEHOFF and RUBIN, JJ., concur.

Order of the Supreme Court, Queens County, entered July 17, 1980, affirmed insofar as appealed from, with one bill of $50 costs and disbursements.